■ ANTHONY F. SALIMONE, JR., et al., Respondents, v. PATSY AMENDOLA et al., Appellants.— GREENBLOTT, J. Appeal from a judgment of the Supreme Court, entered April 24, 1969 in Ulster County, upon a verdict rendered at a Trial Term in favor of plaintiffs. In 1964, respondents sought to purchase a business in Kingston, and were shown the appellants' property consisting of a restaurant with an apartment above it. After initial discussions with the realtor, respondents made an offer of $50,000, accompanied by $1,000 as a down payment. Thereafter, one of the respondents, Mrs. Salimone, went to the premises to inspect it. She alleges that she was shown the books of the business, and appellant, Patsy Amendola, represented to her that the business had grossed $43,000 for the fiscal year from June, 1963 to June, 1964. Respondents contend that in reliance upon these representations, they agreed to pay $51,000 for the property. A contract of sale was then executed providing for possession on August 15, 1964. The agreement further provided that payments of an additional $9,000 were to be made by August 10, 1964, and respondents were to assume a first mortgage upon closing, and were to attempt to obtain a G. I. Mortgage. While applying for the new mortgage, and pending the closing, respondents were to pay $475 per month which was to be applied in reduction of the existing mortgage. Shortly after signing

the contract but before possession was taken, respondents were notified by a Kingston bank that their application for $31,000 had been refused, on the ground that it was doubtful that sufficient income could be derived from the premises to support the mortgage. It is contended that when Mr. Amendola was informed of this by Mrs. Salimone, he repeated his assurances that the business had grossed $43,000. Respondents took possession, having paid $10,000 up to that point. They began to pay appellants $475 per month and operated the restaurant. However, after repeated attempts to secure new financing, respondents were able only to obtain an offer for a conventional mortgage of $20,000 which was unacceptable to appellants. Respondents also discovered, after operating the business for one year, that gross receipts totaled approximately $26,300 and not $43,000, as allegedly represented. Thus, unable to close title due to the financing difficulties, and failing to do the expected amount of business, respondents abandoned the property in December, 1965. The complaint alleges that the appellants' fraudulent misrepresentations induced respondents to enter into the contract of sale. Appellants interposed a counterclaim for the reasonable value of use and services while the premises were in the possession of the respondents. The jury returned a verdict for respondents. Appellants contend that respondents have failed to prove actionable fraud because they did not prove any representation inducing them to contract. If any statements were made, they argue, they were " sales talk " only. Additionally, they contend that if there were fraudulent misstatements, respondents discovered them while the contract was executory, and before they took possession, and thus they could not have relied upon them. Finally, appellants submit that their counterclaim was improperly dismissed. On the trial, Mrs. Salimone testified that Mr. Amendola had made certain oral statements to her as to the value of the business and what it had grossed in the prior year. Whether these statements were made, and what they entailed if made, constituted a factual question which was properly left to the jury (*Mills Studio* v. *Chenango Val. Realty Corp.*, 15 A D 2d 138). Since it cannot be said that the verdict is against the weight of the evidence, we should not disturb it. Similarly, there is no merit to appellants' contentions that the fraud was discovered while the contract was still executory. The earliest possible suspicion that respondents could have had that all was not as appellants had described it, was when respondents' first mortgage application was refused. At that time, however, the contract had been signed, and respondents were given immediate reassurance that $43,000 had been grossed. Thus, appellants continued their alleged misrepresentations up until the time that respondents took possession of the premises. However, appellants are entitled to receive the reasonable value of the use and occupation of the premises. Respondents were permitted to enter into possession pending closing on condition that they pay $475 a month toward the balance of the purchase price. They were in possession for nine months and paid $4,275 under the agreement. Where, as here, affirmative relief of an equitable nature is sought, the parties should be returned, so far as possible, to the position they occupied before negotiations took place. Therefore, as a condition of relief to respondents, they should compensate appellants for the value of the premises during the period of their possession (see 49 ALR 2d 1170). There is no evidence to support the jury's finding that the reasonable value was nil. Since the question of value of use and occupation of the premises is one of fact for the jury, a new trial is required unless respondents are willing to stipulate to a reduction of the verdict in the amount actually paid, $4,275, which is, in our view, a fair sum for use and occupancy of the premises. Judgment reversed, on the law and the facts, without costs, and a new trial ordered unless respondents stipulate to reduce

the verdict to $10,000, with interest thereon, from the 22d day of April, 1969. Herlihy, P. J., Staley, Jr., Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Greenblott, J.